IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

MICHAEL EDWARD SIMS, Reg. No. 500566, )
)
                Plaintiff, )
)
                v. )   No. 05-4284-CV-C-NKL
)
ZAK RODGERS, et al., )
)
                Defendants. )

## REPORT AND RECOMMENDATION

      Plaintiff Michael Edward Sims, an inmate confined in a Missouri penal institution, brought this case under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its corresponding jurisdictional statute, 28 U.S.C. § 1343. This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

      Defendants have filed a motion for summary judgment and plaintiff has filed suggestions in opposition. Plaintiff argues that Boone County Jail defendants Zak Rodgers and Heidi Fussner acted with deliberate indifference to his health when they denied him proper medical care for his complaints of chest pain. Defendants argue there is no dispute of material fact as to plaintiff's claims relating to his medical care while incarcerated at the Boone County Jail, and that they are entitled to judgment as a matter of law.

### Factual Background

      Plaintiff Simms was a prisoner at the Boone County Detention Center, in Boone County, Missouri in 2005. On August 30, 2005, Simms declared a medical emergency, complaining of chest pains. The evidence shows that at approximately 6:05 p.m., defendant Rodgers, a guard at the Boone County Detention Center, received an incoming call from Simms' jail intercom stating he was having chest pains and needed to see a doctor. Rodgers responded, telling Simms he would have officers and a nurse sent immediately. Rodgers then radioed for officers and the nurse to respond to Simms' cell for a medical emergency for complaints of severe chest pains.

Four nondefendant officers and a nondefendant nurse responded, and at approximately 6:07 p.m., the cell door was opened so Simms' medical condition could be evaluated.

Simms complained to the nurse of feeling short of breath, and stated it was the officers' fault that he was having pain, and that the pain was related to stress and anxiety caused by the officers taking his wife's picture from him. The officers directed Simms to stop arguing regarding other issues and to allow the nurse to evaluate him. The nurse checked Simms' breathing, pulse, blood pressure, and temperature. The nurse advised Simms he needed to gain control over his anger and settle down. Simms breathing, pulse, and blood pressure were continually monitored for approximately twenty minutes, and it was determined his condition was stable. Simms was given nitroglycerin pills to alleviate his feelings of chest pain. At 6:30 p.m., the officers and the nurse escorted Simms to the jail's medical clinic for further evaluation. It was noted by the nurse that Simms was ambulating normally and was not grabbing his chest during the walk. An EKG was performed at the clinic which indicated all was normal. The nurse advised Simms that in her professional opinion, she perceived him to be having panic attacks. The nurse further advised Simms on breathing technique and use of positive imagery to manage his stress, and Simms voiced understanding. The nurse submitted a referral for Simms to be evaluated by mental health. At 6:45 p.m., Simms was returned to his cell by the officers.

At approximately 8:40 p.m., Simms again activated the intercom system from his cell and stated he was having more chest pains. Rodgers notified the sergeant on duty, who ordered two of the officers who had earlier in the night helped the nurse assess Simms, to take Simms' blood pressure. The officers quickly took Simms' blood pressure, and at 8:45 p.m., called the on-call nurse Heidi Fussner and advised her of the situation. As the supervisor of nursing, Nurse Fussner had received the previous report regarding Simms' chest pains earlier in the evening, and based on such report, and the report of the officers advising that Simms was upset over a picture being removed from his possession, advised that Simms be given another nitroglycerin pill because he was probably having A-typical chest pains. At 8:57 p.m., the officers who checked Simms' blood pressure followed the directive of Nurse Fussner and gave him another pill and directed him to lay down and rest.

Subsequently, at approximately 11:57 p.m., Nurse Fussner came into the jail to evaluate Simms and called him into the jail's medical clinic. Fussner noted Simms had been sleeping, but

upon arriving at the clinic, he complained of some numbness in his right arm and chest. Simms stated to Fussner that his doctor has previously told him his anxiety causes his symptoms. Fussner conducted two EKG's on Simms, both of which indicated normal, and noted his vital signs to be stable. Fussner submitted the information on Simms to be received by the jail doctor, Dr. Blackburn, and further referred plaintiff for mental health evaluation. Fussner further noted in plaintiff's medical records that this was not plaintiff's first time complaining of chest pains, and that he had a history at the jail of calling medical emergencies when he gets upset.[1]

## Summary Judgment Standard

Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

---

[1] For further medical emergency complaints, see Simms' medical records submitted with Defendants' Motion for Summary Judgment, Doc. 79, Exh. 5.

3

If "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

**Eighth Amendment Claims of Deliberate Indifference to a Serious Medical Need**

To succeed on his Eighth Amendment medical claims, plaintiff must allege and prove, by a preponderance of the evidence, a "deliberate indifference to a serious medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Prison officials may not be held liable under 42 U.S.C. § 1983 for mere negligence in the treatment of an inmate. Id. The standard for "deliberate indifference" includes an objective and a subjective component. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Thus, to prevail on his claims, plaintiff must show 1) that the medical deprivation was objectively sufficiently serious; and 2) that prison officials subjectively knew about the deprivation and refused to remedy it. A serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)); see also Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (citing Camberos v. Branstad, 73 F.3d at 176). A mere difference of opinion between plaintiff and his treating physician about what treatment is appropriate does not give rise to a colorable claim under section 1983. Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990); Courtney v. Adams, 528 F.2d 1056 (8th Cir. 1976). Likewise, disagreement with a diagnosis or course of medical treatment is insufficient to state a claim. Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993). Nothing in the Eighth Amendment prevents doctors from exercising independent medical judgment. Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

*Zak Rodgers*

The evidence shows that Zak Rodgers, in responding to Simms' complaints of chest pain, treated such complaints as related to a serious medical condition. However, Simms has come forward with no evidence to support that Officer Rodgers denied him treatment, or knew that plaintiff was being denied treatment and refused to remedy it.

Simms' allegations that defendant Rodgers was deliberately indifferent to his health and safety when he failed to call 911 is not supported by the evidence. Although plaintiff indicates

4

he requested that Rodgers immediately call 911 when he was complaining of chest pains, the fact that Rodgers did not call 911 fails to show he was indifferent to Simms' health. The evidence shows that on both occasions on August 30, 2005, when Simms was complaining of chest pains, Rodgers followed jail policy and procedure and ensured Simms received immediate medical evaluation and that appropriate personnel was notified.

There is no dispute of genuine material fact as to defendant Rodgers, and based on the material facts, no reasonable jury could find that the response of Officer Rodgers to Simms' complaints of chest pain constituted deliberate indifference to Simms' health or safety.

*Heidi Fussner*

The undisputed medical records clearly show Nurse Fussner treated Simms' complaints of chest pain as if they could be indicative of a serious medical condition, and ensured Simms received medical care regarding these complaints. Based on the medical records, no reasonable jury could find Simms was suffering from a serious medical condition for which Nurse Fussner denied him treatment. The fact that Simms wanted to be taken to the hospital with regard to his complaints of chest pains, but was not taken, shows nothing more than plaintiff's disagreement in his course of treatment, which is not actionable under section 1983.

**Delay in Medical Care**

To the extent plaintiff seeks relief on his claims of deliberate indifference based on allegations that defendants delayed his medical care, he must show he was adversely affected by the delay.

When an inmate alleges a delay in medical treatment constituted a constitutional deprivation, the objective seriousness of the deprivation is also measured by reference to the effect of the delay in treatment. Coleman v. Rahija, 114 F.3d at 784 (citing Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)); see also Beyerbach v. Sears, 49 F.3d at 1326. An inmate who complains that the delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Beyerbach v. Sears, 49 F.3d at 1326 (quoting Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)).

Simms has come forward with no evidence to support that he was adversely affected by any alleged delay in his receipt of medical care. In fact, Simms has failed to come forward with

5

evidence that his chest pains were in any way even related to a serious medical condition of which a delay could adversely affect. Based on this lack of evidence, no reasonable jury could find that any alleged delay in Simms receiving medical care deprived him of medical treatment for an objectively serious medical condition. Laughlin v. Schriro, 430 F.3d 927 (8th Cir. 2005) (lack of evidence that delay in arranging treatment of inmate's heart attack had detrimental effect on inmate precluded finding of objectively serious deprivation of medical care).

**Conclusion**

As set forth above, Simms has failed to come forward with evidence to support his claims that defendants Zak Rodgers and Heidi Fussner were deliberately indifferent to his health or safety, in violation of his Eighth Amendment constitutional rights. Simms' response to summary judgment indicates he was unhappy with defendants' assessment of his medical complaints and some conduct violations he received for the manner in which he declared multiple medical emergencies and the unfounded nature of his medical complaints, but provides no supporting evidence for a claim of deliberate indifference to his medical care. From the undisputed material facts in this case, no reasonable jury could find that Simms' medical care was denied or delayed by defendants Zak Rodgers and Heidi Fussner, in violation of the Eighth Amendment.

IT IS, THEREFORE, RECOMMENDED that defendants' motion for summary judgment be granted and plaintiff's complaint be dismissed. [77]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days. The District Judge will consider only exceptions to the specific proposed findings and recommendations of this report. Exceptions should not include matters outside of the report and recommendation. Other matters should be addressed in a separate pleading for consideration by the Magistrate Judge.

The statute provides for exceptions to be filed within ten days of the service of the report and recommendation. The court has extended that time to twenty days, and thus, additional time to file exceptions will not be granted unless there are exceptional circumstances. Failure to make specific written exceptions to this report and recommendation will result in a waiver of the right to appeal. See L.R. 74.1(a)(2).

Dated this 22nd day of January, 2008, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge

7